[L. A. No. 6082. Department Two.—September 14, 1920.]

BITUMINIZED BRICK & TILE COMPANY (a Corporation), Plaintiff, Cross-defendant and Respondent, v. SIMONS BRICK COMPANY (a Corporation), Defendant, Cross-complainant and Respondent; JOSEPH SIMONS et al., Defendants, Cross-complainants and Appellants.

[1] CORPORATIONS — CONFLICTING CLAIMS TO STOCK — FINDING—EVIDENCE.—Where in an action by a corporation to determine the ownership of certain shares of its stock as between another corporation and certain of its officers in whose names the stock was issued, the evidence was substantially conflicting, the finding that the consideration for the stock was paid by the other corporation, and not by such officers, and that such corporation was the

owner thereof, cannot be said to be without evidence to support it.

[2] Id.—Payment of Consideration—Evidence.—In such action, the rule prohibiting the admission of oral testimony to vary the terms of a written contract was not violated by the admission of parol evidence that the consideration for the stock was paid by the other corporation, notwithstanding such evidence contradicted the recitals in the minutes of the issuing corporation that the consideration was paid by the officers in whose names the stock was issued, since the rule applies only to controversies concerning the subject matter of the contract arising between the parties to the contract.

[3] Id.—Written Statement of Assets.—In such action, a written statement of the assets of the other corporation showing the listing of the stock as a corporate asset was admissible, where it was shown that it had been prepared at the request of one of the officers in whose name the stock was issued and the data assembled by all of the officers in the office of the corporation.

[4] Id.—Manner of Holding Stock.—In such action, testimony as to a conversation between the officers in whose names the stock was issued as to whether or not they would take the stock and keep it as their individual property or on behalf of and for the corporation, is inadmissible, in the absence of evidence that the conversation was had in the hearing and presence of the other officer of the corporation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. J. Ford and Henry G. Bodkin for Defendants, Cross-complainants and Appellants.

Davis, Kemp & Post and Kemp & Clewett for Defendant, Cross-complainant and Respondent.

LENNON, J.—The corporation plaintiff in this action of interpleader sought a judgment determining the ownership of certain designated shares of its corporate capital stock. The plaintiff's complaint proceeded upon the theory that there were conflicting claims to the title of the stock in suit which were being asserted repeatedly by the defendant

---

2. Application of parol evidence rule to strangers to contract, note, 8 Ann. Cas. 347.

Simons Brick Company on the one hand and the six other defendants on the other hand. All of the defendants to the action cross-complained and by appropriate allegations pleaded their various claims to the stock in question. The trial court found, among other things, that the consideration for the issuance of the stock in controversy was paid solely by the Simons Brick Company, that said stock was issued in the name of Joseph Simons and E. O. Simons as trustees for the owner thereof, namely, the Simons Brick Company, that the latter, as the owner of the stock, was entitled to all dividends paid thereon, and that neither defendant Joseph Simons nor the other defendants, as the heirs of E. O. Simons, deceased, had any interest in said stock or in the dividends due therefrom. The plaintiff, Bituminized Brick & Tile Company, was adjudged to be relieved from all liability for and on account of its dealings with the said stock, and judgment was rendered and entered in favor of the defendant Simons Brick Company, declaring it to be the owner of and entitled to the said stock. From this judgment an appeal has been taken upon the judgment-roll and bill of exceptions, a reversal being urged primarily upon the ground that the evidence does not sustain the findings in the particulars (1) that it does not appear from any competent evidence that the defendant Simons Brick Company was the actual owner of the stock; (2) that there is no evidence that the consideration for the stock was paid by the defendant Simons Brick Company. The two questions involved in this contention are so closely interwoven as to justify a single discussion of the evidence bearing upon that phase of the case.

Upon behalf of the Simons Brick Company, and in support of its claim of ownership of the stock in suit, evidence was adduced to the effect as follows: The plaintiff, Bituminized Brick & Tile Company, was incorporated about the seventeenth day of February, 1908, and at that time the defendant Simons Brick Company was a corporation of which the defendant Joseph Simons and E. O. Simons were directors and, respectively, president and secretary. Aside from purely nominal stockholders, all of the stock in the Simons Brick Company was owned by three brothers, Joseph Simons, Walter Simons, and E. O. Simons, since deceased. The Bituminized Brick & Tile Company was organized and incorpo-

rated under the laws of the state of California pursuant to an agreement entered into by and between the Simons Brick Company, Fairchilds-Gilmore-Wilton Company, and one George P. Griffith, whereby it was understood and agreed that the parties to the agreement would respectively advance proportionately the money needed to establish and maintain the new corporation in the business of manufacturing bituminized brick. The defendant Simons Brick Company advanced to the Bituminized Brick & Tile Company, from time to time in keeping with said agreement, the sum of two thousand and sixty-odd dollars in cash or the equivalent of cash. At its organization meeting, the Bituminized Brick & Tile Company caused to be issued forty and one-half shares of its capital stock in the name of E. O. Simons and the defendant Joseph Simons. At the time of the issuance of said stock said Joseph and E. O. Simons were, respectively, the president and secretary of the Bituminized Brick & Tile Company. After the issuance of the said stock to the said Joseph Simons and E. O. Simons, the Bituminized Brick & Tile Company levied an assessment thereon, which was paid by the defendant Simons Brick Company. When issued the said stock was deposited in the safe of the Simons Brick Company and remained there up to the time of the commencement of the action, and was at all times carried as a corporation asset on the books and bank statements of the corporation. Prior to the commencement of this action, Walter Simons purchased from the other stockholders of the Simons Brick Company all of the stock in the said Simons Brick Company with the exception of the shares of the minor children of E. O. Simons, deceased, and the one share of stock apiece held by the members of the board of directors to enable them to qualify. The question thereupon arose as to whether the shares of stock in the Bituminized Brick & Tile Company passed as assets of the Simons Brick Company, or whether they were personal holdings of the parties in whose names they were issued, namely, Joseph, Walter and E. O. Simons. The defendants Laura Simons Garfield, Joe Taylor Simons, and Helen Simons, the two last-named persons being minors, and Laura Simons Garfield the guardian of the persons and estates of the minors, were, during all of the times involved in the controversy concerning the stock, the sole legatees and devisees by last will and testa-

ment of the estate of E. O. Simons, deceased, who died in
or about the month of June, 1913. They were the widow
and children of E. O. Simons, deceased, and were made de-
fendants in this action in his place and stead.

The minutes of the organization meeting of the Bitumin-
ized Brick & Tile Company show that the president and
secretary thereof, namely, Joseph and E. O. Simons, were
authorized to issue the shares of stock in controversy here
to said Joseph and E. O. Simons "in consideration of moneys
to be paid by said parties for the building of the plant of
this company." Apparently it is upon this latter piece of
evidence that counsel for appellant rely primarily to support
their contention that the initial agreement to advance the
needed funds for the establishment of the business of the
Bituminized Brick & Tile Company was purely personal to
Joseph and E. O. Simons, and was not the corporate con-
duct and contract of the Simons Brick Company. Standing
alone, the minutes of the organization meeting mentioned
might suffice as *prima facie* evidence of the fact that the
agreement to advance the money was the personal and indi-
vidual obligation of Joseph and E. O. Simons. But, taken
and considered in conjunction with established circum-
stances concerning the conception and consummation of the
initial agreement, the conclusion is inescapable that the
Simons Brick Company, as represented by Joseph and E. O.
Simons, was the real party obligated and to be benefited by
the initial agreement, and not Joseph and E. O. Simons
individually. Incidentally, it should be noted that the record
is barren of any evidence showing or tending to show that
Joseph and E. O. Simons individually and directly gave any
consideration for the issuance of the stock in suit, or that
any consideration was given therefor aside from the money
or its equivalent advanced by the Simons Brick Company
to the Bituminized Brick & Tile Company. Moreover, there
is evidence that, when the cross-defendant Walter Simons
discovered that the stock in suit stood in the names of Joseph
and E. O. Simons upon the books of the Bituminized Brick
& Tile Company and not in the name of the Simons Brick
Company, he made objection thereto, specifying as grounds
thereof that "it was the Simons Brick Company's money
that went into the investment," and insisted that "the stock
belongs to the Simons Brick Company." To this objection

and claim of Walter Simons, Joseph and E. O. Simons replied: "All right, we will straighten it out," and thereupon, so some evidence shows, agreed with the said Walter Simons that the stock in suit should be "divided up in the names of Joe Simons, Elmer Simons and Walter Simons . . . and that it would be held by the Simons Brick Company in that way." The stock was accordingly returned and reissued by the Bituminized Brick & Tile Company to Joseph, E. O., and Walter Simons in certain specified proportions. There is evidence tending to show that the purpose in causing the stock to be issued in the names of the three brothers, rather than in the name of the corporation, was to enable the former to qualify as officers of the Bituminized Brick & Tile Company.

It may be conceded, as counsel for appellant contend, that the manner of making the several payments or advancements, either in cash or the equivalent of cash, claimed to have been made by the Simons Brick Company, coupled with the character of the bookkeeping entries of the several amounts which went to make up the sum total of $2,060, might have supported the inference that said sum and the several items thereof were carried by the Simons Brick Company as an open account with the Bituminized Brick & Tile Company, rather than as an entry of the passing from the Simons Brick Company of the consideration called for by the initial agreement. On the other hand, there was much evidence in explanation of said several payments which, when coupled with the circumstances, unnecessary to be detailed here, preceding, attending, and following the creation of the new corporation tended to show, and consequently warranted the inference which the trial court apparently made, that the said several items were entered and carried upon the books of the Simons Brick Company as evidence of the passing of the consideration called for by the initial agreement to promote the Bituminized Brick & Tile Company.

True, there is some evidence in the record which would have supported a finding contrary to that made by the trial court and, while counsel for appellant argue with much vigor that the preponderance of the evidence adduced upon the whole case should have compelled the trial court to make findings favorable to the appellant, of course, such an argu-

ment necessarily involves a weighing of conflicting evidence in order to determine where the preponderance may rest. That, however, was solely the province of the trial court. [1] In short, a careful consideration of the evidence adduced upon the whole case satisfies us that there exists a substantial conflict of competent evidence which was directed to the issue of the ownership of the stock in controversy, which issue, of course, involved the subsidiary issue of the source and character of the consideration for its issuance. Confronted, as we are, with this condition of the evidence, it is idle to argue here in this court that there is no evidence to support the trial court's finding "that the consideration for said stock was paid by the Simons Brick Company, a corporation, and was not paid for by the said Joseph Simons, or the said E. O. Simons, or either of them, but said stock was issued in the name of E. O. Simons and Joseph Simons, as trustees for the Simons Brick Company and the Simons Brick Company has at all times been and now is the owner of the said stock since the issuance thereof to the said E. O. Simons and Joseph Simons." Needless to say, these findings being supported by some sufficient evidence, it follows necessarily as a matter of law that the judgment is supported by the findings and it goes without saying that the finding of ownership in the Simons Brick Company of the stock in suit is ample support for the other and further finding that the Simons Brick Company was and is entitled to the dividends emanating from said stock.

[2] Concerning the competency of some of the evidence to support the assailed findings, it is suggested, rather than contended, that the minutes of the organization meeting of the Bituminized Brick & Tile Company constituted a contract in writing between that corporation and Joseph Simons and E. O. Simons, which contract completely evidenced the intent and covenant of the parties thereto and, consequently, that the trial court erred in permitting parol evidence for the purpose of contradicting the recitals of the contract. In response to this it will suffice to say that, conceding the minutes of the organization meeting to be a contract, the rule prohibiting the admission of oral testimony to vary the terms of a written contract applies only to controversies concerning the subject matter of the contract arising between the parties to the contract. (*Dunn* v. *Price*, 112 Cal.

46, 51, [44 Pac. 354]; *Smith* v. *Goethe,* 159 Cal. 628, 632, [Ann. Cas. 1912C, 1205, 115 Pac. 223]; *Massy* v. *Chatom,* 163 Cal. 772, 777, [127 Pac. 56]; *In re Smith's Estate,* 176 Cal. 729, [171 Pac. 289].) Obviously the controversy here was not between the Bituminized Brick & Tile Company and Joseph Simons and E. O. Simons, and, consequently, the rule referred to has no application to the facts of this case.

It is contended upon behalf of appellant that, even though it be conceded, as we find, that there was evidence sufficient to support the finding of the trial court that the consideration for the stock in controversy was paid by the Simons Brick Company, nevertheless, the evidence adduced upon the whole case shows, it is claimed, that after the stock was issued there was an amicable agreement by and between Walter Simons, Joseph Simons, and E. O. Simons, who were practically the owners of the entire capital stock of the Simons Brick Company, to apportion unto themselves and hold and own individually the stock of the Bituminized Brick & Tile Company and that, as a consequence of that agreement, Walter Simons, as one of the parties thereto, is estopped from questioning the validity of the agreement. The answer to this contention is to be found in the fact that the record shows, as previously indicated, evidence to the effect that, when Walter Simons protested the assumption of individual ownership of the stock in suit by Joseph and E. O. Simons, the latter agreed not only that the stock should be held in certain designated proportions in the names of Joseph, E. O., and Walter Simons, but that it should be so held by them *as the property and asset of the Simons Brick Company.* We need not stop, therefore, to consider the doctrine of estoppel as perhaps it may be applied to a situation where the stockholders of the corporation voluntarily and unanimously consent to a distribution of all or a part of the corporate assets among themselves in a manner and under circumstances which in no way impair the rights of creditors.

[3] Complaint is made of the ruling of the trial court admitting in evidence a document produced from the files of the Simons Brick Company, claimed to be a statement of the assets of the Simons Brick Company for which the data was assembled by the three brothers, Joseph, Walter, and E. O. Simons. Objection was made to the document in

evidence upon the ground that it was but a copy of an original statement sent to a bank for the purpose of obtaining credit, and, therefore, was not the best evidence. To what extent the recitals of the document were material we can only surmise, for, while it was "ordered received in evidence and marked defendant's exhibit one" we have been unable to find it in the record, and, therefore, we might dispose of the claim of error in this particular upon the ground that the record before us does not show affirmatively all the facts upon which the claim of error is predicated. However, assuming, as may be fairly inferred from the record as a whole, that the document in question was the statement of assets frequently referred to throughout the testimony adduced upon the whole case, wherein the stock in suit was listed as a corporate asset of the Simons Brick Company, the objection to its admission upon the ground stated was not well taken. This is so for the reason that it was ultimately shown that the document in question was not a copy but an original statement filed among the papers of the corporation, a copy of which was delivered to the bank.

It was, as the trial court ruled, an original document. The contention that the subject matter of the document in question was hearsay in so far as defendant Joseph Simons was concerned is effectively and adversely answered by the record itself, which shows the foundation evidence for the introduction of the document in evidence to be that it had been "prepared by the Simons Brick Company at the request of the president Joe Simons," and that the "data" therefor was "assembled" by "Mr. Joseph Simons . . . and Elmer Simons in the office of the Simons Brick Company."

[4]   There is no merit in the contention that the trial court erred in refusing to permit defendant Joseph Simons to narrate a conversation purporting to have been had between himself and E. O. Simons as to whether or not they would take the stock in suit from the Bituminized Brick & Tile Company and keep it as their individual personal property or take it on behalf of and for the Simons Brick Company. It was not shown nor attempted to be shown that this conversation was had in the presence and hearing of the defendant Walter Simons and, therefore, as to him, it was hearsay and consequently properly rejected upon that

ground, which was the ground of objection made in the trial court.

The judgment appealed from is affirmed.

Wilbur, J., and Sloane, J., concurred.